In the Matter of the Estate of SAMUEL G. THOMPSON, Deceased.

Surrogate's Court, Suffolk County, May 31, 1932.

*Herman Kahn,* for the petitioning heirs.

*Raymond A. Smith,* for the respondents.

PELLETREAU, S. Samuel G. Thompson died March 11, 1923, leaving a will probated in this court May 28, 1923. He left him surviving a widow, Sarah J. Thompson, and nephews, nieces, grand-nephews, and grandnieces.

The will among other things reads as follows:

" *First.* I direct that all my just debts and funeral expenses be paid.

" *Second.* All the remainder of my property I give to my wife, Sarah J. Thompson, during her natural life, with power to sell all real and personal property and to use all she may need of the proceeds for her support and comfort, and at her death I give all that is left unused to my daughter, Effie Thompson.

" *Third.* I hereby appoint my friends, Joseph S. Osborne and Rev. Francis V. Baer executors of this Will, hereby revoking all former Wills by me made. No bonds shall be required of the executors."

The said daughter, Effie Thompson, predeceased the testator.

The executors rendered their account; by a decree of this court, dated February 18, 1924, same was settled. The entire estate was personalty, the net amount was $24,160.05, and the decree directed that said executors' pay over said net estate to the widow, said Sarah J. Thompson. That decree was an error.

At the time of the rendition of the account, no notice was given by the executors to the heirs of Samuel G. Thompson. The petition of the executors to settle their accounts was dated January 31, 1924, and they therein asserted that the widow, Sarah J. Thompson, was the only person entitled to notice. Thereon a citation was issued to her alone, dated February 1, 1924, for the judicial settlement of the accounts.

The will gave the widow of the decedent a life interest in the corpus of the estate with the right to resort to the capital as might be necessary " for her support and comfort." Upon the rendering of their account, as aforesaid, the executors were discharged. They turned the entire assets of the estate over to the widow, Sarah J. Thompson.

Upon the death of Samuel G. Thompson, his widow had her sister, Isabelle Pullis, and the latter's daughter, Lottie Pullis, come and live with her, and they so remained until the death of the widow November 29, 1928. She survived her husband about five and one-half years.

The home at Sag Harbor, in which they resided, had been owned by Samuel G. Thompson and Sarah J. Thompson, his wife, as tenants by the entirety. It was, therefore, no part of his estate, but upon his death it became the absolute property of Sarah J. Thompson, and she deeded it to her sister, Isabelle Pullis.

While the said Isabelle S. Pullis and her daughter, Lottie W. Pullis, were living with Mrs. Thompson, she turned over to Isabelle S. Pullis, aforesaid, a total of $17,815.34, and to Lottie W. Pullis $6,121.82. The widow, Sarah J. Thompson, clearly implied that this money came from the estate of Samuel G. Thompson; that she wanted her sister and her niece to have it, and that she did not want relatives of her husband to get one cent from his estate. In my opinion she well knew and thoroughly appreciated the fact that all the proceeds of the personal estate of her husband, after providing for her support, rightfully and lawfully passed to the heirs of her husband. She sought to defeat the will of her husband in that respect. In my opinion, her sister, Isabelle S. Pullis, and her niece, Lottie W. Pullis, were likewise fully cognizant of the situation. They may have used some portion of what was given them for the support of Mrs. Thompson; I do not know.

The heirs of Samuel G. Thompson have received nothing. An injustice has been done. The righting of the wrong should not be defeated on technical grounds.

There has been no administration upon the estate of Sarah J. Thompson. Apparently she left no estate, she having, during her lifetime and after her husband's death, given all she had or controlled to her sister, Isabelle S. Pullis, and her niece, Lottie W. Pullis.

The bonds of the face value of $5,000 which were put into the custody of counsel during the hearings herein, in my opinion, are a portion of the proceeds of the estate of Samuel G. Thompson, and should be impounded and sold.

I am very firmly of the opinion that all the proceedings of the executors of the will of Samuel G. Thompson were in good faith, and they rightfully and properly accounted, and that these proceedings as against Francis V. Baer, surviving executor of the will of Samuel G. Thompson, and against Nelson C. Osborne, son of Joseph S. Osborne, deceased, should be dismissed. Nelson C. Osborne fully and satisfactorily explained all his transactions and those of his father relating to this estate.

The decree heretofore entered upon the estate of Samuel G. Thompson should be amended and corrected, and the respondents Isabelle S. Pullis and Lottie W. Pullis, should make restitution of whatever property came to them from the estate of Samuel G. Thompson after the support of his widow. Decree accordingly.

Upon the basis of the foregoing opinion, filed May 31, 1932, a decree was duly made and filed by the surrogate, dated June 6, 1932, adjudging a construction of the last will of the decedent, and that the will gave the widow " only a life estate, with the right to

use the income thereof and so much of the capital as was necessary for her support and comfort;" that the remainder of the estate passed to the heirs at law of the decedent, because the remainder-man named in the will predeceased him; that the widow, "in violation of the provisions of the last will and testament of the decedent," turned over to her sister and niece, the respondents Pullis, large sums of money; that, out of the moneys so turned over by the widow to the respondents, there remained in various banks under the control of the respondents, at the time of the death of the widow, a total of $13,146.09, and also $5,000 of bonds, and the respondents were ordered to turn the same over to the heirs forthwith, with accruals thereon; and that, as to a total of $4,718.21 out of the moneys they received from the widow and which they claimed to have spent for her benefit during her lifetime, the respondents were directed to render an account forthwith.